IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND FOR
GADSDEN COUNTY, FLORIDA

CASE NO. 04- 366-CAA
FLA BAR NO. 0739685

JACK HUBMANN,

      Plaintiff,

vs.

W.A. WOODHAM, in his official
capacity as SHERIFF of Gadsden
County, Florida,

      Defendant.

_____/

## COMPLAINT

Plaintiff JACK HUBMANN, hereby sues Defendant, W.A. WOODHAM, in his official capacity as SHERIFF of Gadsden County, Florida and alleges:

1.    This is an action for damages which exceed Fifteen Thousand Dollars ($15,000.00).

2.    Plaintiff, JACK HUBMANN, at all times pertinent hereto, has been a resident of Gadsden County, Florida. He has also been an "employee" as that term is defined under §112.3187, et seq., Florida Statutes, of Defendant and the other laws identified herein. He is thus sui juris.

3.    At all times pertinent to this action, Defendant, W.A. WOODHAM, has been the Sheriff of Gadsden County, Florida and has been Plaintiff's employer. Defendant conducts business within the geographical boundaries of this court.

4.    Plaintiff has exhausted all conditions precedent, if any, to the filing of this action.

5.    Plaintiff was initially employed with Defendant on or around July 17, 2000, as a Deputy Sheriff. He was transferred from a Road Deputy position in 2003 after he reported and/or

objected to suspected or actual activities by Defendant that constituted gross misuse of position and authority, malfeasance, misfeasance and/or other matters recognized under §112.3187 et seq. to a position in Defendant's jail with a reduction in pay. Plaintiff was terminated on January 9, 2004 on contrived allegations.

6.      During the course of Plaintiff's employment with Defendant, prior to his demotion, Plaintiff engaged in whistle blowing activities which are related in part below. By way of example, on February 4, 2003, Plaintiff and other deputies/supervisors with Defendant were ordered to Baker Act a civilian Dean Fenn. Sheriff Woodham and Major Ed Spooner made this request. Plaintiff and a co-workers then met with a Sergeant Dolan with Defendant to discuss the criteria for Baker Acting Mr. Fenn. They determined that the criteria was not met but went to Mr. Fenn's residence to discuss with him and observe his mental state.

7.      Thereafter, Dean Fenn voluntarily agreed to be taken by the deputies to Tallahassee for a determination as to whether he met the criteria for being Baker Acted. Fenn was released the same evening that he was delivered to the Tallahassee facility.

8.      The following morning, February 5, 2003, Plaintiff learned that Fenn had been released.

9.      After his release, Fenn contacted Major Spooner to inquire about the Baker Act proceeding and to determine what the underlying basis was for being transported to Tallahassee for evaluation. Thereafter, Spooner contacted Sergeant Dolan with Defendant who transported Fenn to Tallahassee the previous day and instructed him to again Baker Act Dean Fenn. Sergeant Dolan then wrote the Baker Act paperwork up based on the instructions given by his superior, Major Spooner. Plaintiff was responsible for transporting Dean Fenn to Tallahassee to the Apalachee Mental Health

2

Center to be Baker Acted. Plaintiff felt certain, at that time, that Mr. Fenn would be release from the Apalachee Mental Health Center the same day just like he had been released the previous day from another Tallahassee mental health facility.

10.    Upon arrival at the Apalachee Mental Health Center, Plaintiff spoke to a counselor about Mr. Fenn and was advised that Sheriff Woodham had called the director of the Center and that they were going to Baker Act Mr. Fenn. Plaintiff inquired as to how she intended to do that without any evaluation to determine if he met the criteria to be Baker Acted. The counselor told Plaintiff that she did not know anything about Mr. Fenn, whether he was "black or white" but that they were going to Baker Act him.

11.    At and prior to that time, Plaintiff suspected that Mr. Fenn had been set up and that he was improperly transported to be Baker Acted.

12.    Approximately one week later, Plaintiff went to his employer to retrieve his pay check and advised Major Spooner that what happened to Dean Fenn was "wrong" and that Spooner knew that "it was wrong." Thereafter, Plaintiff's employment relationship with Defendant began to sour and eventually resulted in Plaintiff's termination.

13.    Specifically, and without limitation, after Plaintiff advised Spooner of the above, he began to get in trouble for petty incidents. By was of example only, in March, 2003, Plaintiff was falsely accused of missing an appointment with Major Spooner that had never been scheduled. Thereafter, he was demoted and transferred from a deputy position to a correctional officer position in Defendant's jail. He also received a $3,500.00 cut in pay. When Plaintiff requested documentation on his demotion, he was told by Major Spooner to be "thankful that he had a job." He further advised Plaintiff that if he did not "like it, he could quit."

3

14.     While Plaintiff was working at the jail, he was ordered to sign out and distribute prescription medications to inmates. Plaintiff objected to this and suspected that he and other deputies were engaged in illegal activities in dispensing medications to inmates. A paramedic worked for Defendant and dispensing medication was the paramedic's job unless the paramedic was off duty, at which time dispensing medications became the correctional officers' job.

15.     Between August and the first of November, 2003, Plaintiff was on a medical leave of absence due to a serious health condition.

16.     After his return, in late November, 2003, Plaintiff complained about the practice of non-medical personnel dispensing prescription medications to inmates. He complained to Lt. Mary Ivory, Lt. Brian Alexander and Lt. William Moore, all persons within Defendant's jail who had the ability to cure the problem identified by Plaintiff. Plaintiff was advised later that Major Spooner was unhappy with Plaintiff about his complaints/reports.

17.     In December, 2003, Plaintiff complained about a sergeant within Defendant abandoning her post supervising inmates. She thereafter falsely accused Plaintiff of sleeping on the job. Nothing has ever been provided to Plaintiff to substantiate this allegation.

18.     Plaintiff was fired thereafter on January 9, 2004 and submitted a grievance challenging his termination. Defendant refused to respond and as of the filing of this action, has continued to refuse to respond and to provide Plaintiff with any documents supporting and/or explaining his termination.

19.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay her a reasonable fees for her services. Defendant should be required to pay said fee and any costs associated with this case.

4

## COUNT I- VIOLATION OF CHAPTER 112, FLORIDA STATUTES

20.    Paragraphs 1-19 are incorporated herein by reference.

21.    This is an action brought under §112.3187, et seq., Florida Statutes.

22.    As set forth in greater detail above, in 2003, Plaintiff reported violations and suspected violations of laws, rules and regulations committed by employees and agents of Defendant which created a substantial and specific danger to the public's health, safety and/or welfare and/or acts that were gross misconduct, misfeasance or malfeasance. He further reported these matters to the person authorized and responsible for accepting complaints of the nature reported by Plaintiff under Defendant's policies and procedures.

23.    After Plaintiff reported violations or suspected violations of law and/or acts or suspected acts of gross mismanagement, malfeasance, misfeasance, gross waste of public funds and/or the gross neglect of duty committed by an employee and/or agent of Defendant in accordance with requirements of §112.3187(6), Florida Statutes, Plaintiff was terminated.

24.    The disclosures made by Plaintiff are protected under §112.3187 et seq.

25.    Plaintiffs disclosed the information set forth above initially on his own initiative and to an official within Defendant who had the authority to cure the problems reported by Plaintiff.

26.    After Plaintiff complained about matters protected under §112.3187 et seq, he was discharged, disciplined, and/or subjected to other adverse personnel actions because of his actions protected by §112.3187.

27.    As a direct and proximate cause of Plaintiff's participation in the Whistle Blowing activities identified herein, he has been damaged, which damages include but are not limited to lost wages and other tangible job benefits plus attorneys fees and costs. He has also suffered emotional

5

pain and suffering damages that continue to day.  These losses are permanent and continuing. Plaintiff is also entitled to injunctive relief, including but not limited to reinstatement, and other relief authorized under §112.3187(9).

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

      (a)    An injunction restraining continuing violations of §112.3187 et seq.;

      (b)    Reinstatement to the same position that Plaintiff held before the retaliatory personnel actions or to an equivalent position;

      (c)    Reinstatement of full fringe benefits and seniority rights;

      (d)    Compensation for loss wages, benefits, and other remuneration;

      (e)    Any other compensatory damages allowable at law;

      (f)    Attorney's fees, costs and cost of this action, and

      (g)    Any other relief deemed just and proper under the circumstances.

### COUNT II

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

28.    Paragraphs 1-19 are incorporated herein by reference.

29.    This is an action against Defendant for taking action against Plaintiff after leave that would be considered qualifying leave under the Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. §§2612, 2624.

30.    Between August and November, 2003, Plaintiff availed himself of a right protected by the FMLA by requesting leave due to a serious medical condition.  He was off work due to his serious health condition for several months but not exceeding the time allotted under the FMLA.

31.    Defendant terminated Plaintiff, at least in part, due to the leave he took in 2003.  After

Plaintiff returned from his leave, his employment conditions further deteriorated and he was eventually terminated. Comments were made to Plaintiff as well about his leave and condition and insinuations were made that Plaintiff had a "pill" for everything.

32.     Plaintiff was denied rights and benefits conferred by the FMLA and was terminated after requesting and taking leave.

33.     As a direct and proximate cause of Defendants' willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of his employment, as well as the security and peace of mind it provided him. Plaintiff has sustained mental, nervous, and emotional injury. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages attendant with the loss of his job. These damages have occurred in the past, are occurring at present and will continue in the future.

34.     Defendants' violations of the FMLA were willful.

WHEREFORE, Plaintiff prays for the following relief:

    (a)     that process issue and this Court take jurisdiction over this case;

    (b)     that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

    (c)     enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

    (d)     enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of federal law enumerated herein;

(e)    enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest and liquidated damages; and,

(g)    grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Dated this 10 day of March, 2004.

Respectfully submitted,

Marie A. Mattox
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, FL 32303
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEY FOR PLAINTIFF

8